[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 116 
This is an appeal from the probate of the Last Will and Testament of Margaret W. Skewis, deceased, on the ground that decedent's will was the product of undue influence exercised upon decedent by her sister, Sarah W. Stines, principal beneficiary under decedent's will and executrix thereof.
At the time of testatrix' death, on January 28, 1948, she was seventy-seven years of age and had been totally blind for more than a year. She left surviving three sisters, Mary Nix, Elizabeth Gehman and Sarah W. Stines, and one brother James Watson. Her will was executed on November 15, 1947, under the provisions of which she made the following bequests, viz.: $300. to her brother, James Watson; $250, to her nephew, Edward H. Stines; $250, to Ann Stines, wife of her nephew Edward H. Stines, and the residue of her estate to her sister Sarah W. Stines, whom she appointed executrix. Decedent resided with Mrs. Stines and for several years prior to her death had been suffering from hypertension (arterial), heart disease, arteriosclerosis, high blood pressure and cataracts on both eyes. *Page 117 
The appellants are decedent's sisters, Mary Nix and Elizabeth Gehman and her brother, James Watson. They concede that the will was properly executed. The only ground relied on to set the will aside is the alleged undue influence of Mrs. Stines upon her sister, which they argue, is established by the proofs. They assert that decedent, at seventy-seven years of age, was enfeebled by physical and mental infirmities, that Mrs. Stines exercised complete control over the personal property of decedent for almost a year prior to the execution of the will, excluded other members of the family from decedent's society, participated in the preparation, execution and concealment of the alleged will and was the chief beneficiary and executrix named in the will. They contend that the proofs offered by appellants raise the presumption that the will was the result of undue influence exerted by Mrs. Stines and that the burden to prove the contrary shifted to Mrs. Stines. We have carefully reviewed the testimony and are of the opinion that the evidence does not support appellants' assertions of undue influence, nor that the decedent was so enfeebled by physical and mental illness and infirmities that she was susceptible to the control and influence allegedly exercised by Mrs. Stines over her. The incidents testified to by appellants and their witnesses, upon which they rely to establish the alleged undue influence were not of a convincing character and are not persuasive proof of the charge made against Mrs. Stines. On the other hand, there is the testimony of Dr. Reitman, who attended the decedent on the day of the execution of the will and who had been her attending physician for several months prior to her death. He stated that "in my opinion during the time of my visits and treatment she impressed me as being mentally sound" and "In my opinion any time I saw Mrs. Skewis she was entirely capable of making independent decisions and she was not under the influence of anybody who was, as you say, close to her, or force their will upon her". There was no proof to the contrary by Doctors Sherman and Smith, who testified for the appellants. Dr. Sherman had not treated or seen Mrs. Skewis since October 4, 1946. *Page 118 
Dr. Smith had only treated her on two occasions, on March 8, 1947 and on April 2, 1947. The testimony of Henry C. Berg, a member of the Bar of this State, who prepared the will for Mrs. Skewis, is quite convincing on the questions of Mrs. Skewis' mental condition and the alleged undue influence exercised upon her by Mrs. Stines. On the occasion when Mr. Berg went to Mrs. Skewis' residence to discuss with her the making of her will, she gave him instructions concerning the disposition of her estate and the persons to whom it was to be distributed. At that time, Mr. Berg suggested that Mrs. Stines leave the room while he discussed the details of the will with Mrs. Skewis, but decedent insisted that Mrs. Stines remain. Mr. Berg returned the following day with the typed will, prepared at his office, which he read to Mrs. Skewis. Mrs. Stines was not present at the time. At the conclusion of the reading of the will Mrs. Skewis said to Mr. Berg "that is exactly what I told you yesterday". Thereupon, the will was duly executed in the presence of Mr. Berg and his secretary as attesting witnesses.
What constitutes undue influence sufficient to invalidate a will is a question of law. But whether a will was procured by undue influence is a question of fact for the court, as is the truth or credibility of evidence introduced on such issue and the weight to be given thereto. The mere existence of interest and opportunity to assert it is not sufficient in itself to establish undue influence. The question to be determined is whether from a consideration of all of the facts and circumstances comprised in the proofs an inference of undue influence can be charged against Mrs. Stines, so that the provisions of the will as drawn reflect her undue influence upon decedent. In Loveridge v. Brown etal., 98 N.J. Eq. 381 (E. A. 1925), the court stated:
"* * * And the mere fact that the sole beneficiary of the will was the confidential companion and business adviser of the testator for several years prior to his death, is not, of itself, evidence of undue influence. * * *
"The influence which the law denominates `undue' must be such as to destroy the free agency of the testator and amount to moral or physical coercion. It must be proved, moreover, that the act done *Page 119 
was the result of such coercion. There must be a control exercised over the mind of the testator or an importunity practiced which he could not resist."
Our review of the evidence convinces us that Mrs. Skewis' will was not the product of undue influence allegedly exercised upon her by Mrs. Stines, but that it was her own self-determined disposition of her estate.
Appellants argue that the court below erred in ruling that they were required to bear the burden of establishing that Mrs. Stines exercised undue influence over her sister in the making of the will in question. They contend that the fiduciary and other relationships existing between decedent and Mrs. Stines were such that a presumption of undue influence was thereby created and, therefore, the burden was shifted to Mrs. Stines to prove that she did not exercise such undue influence over her sister. We do not think that the evidence of the relationship between Mrs. Stines and the decedent was of such a character that the burden of proof of undue influence was shifted from the appellants to the proponent of the will. See In re Tobin's Estate,111 N.J. Eq. 592 (Prerog. 1932). However, the court below obviously reached the conclusion that from a consideration of all of the evidence the decedent was of sound mind, memory and understanding and that, although she had been suffering from the physical illnesses mentioned and was blind at the time of the making of the will it "* * * does not believe that the mind of the testatrix was so enfeebled that it could not well resist improper influence or any action that Mrs. Stines, or any one else, to see that a will was prepared and executed", and "the court is satisfied that the will under consideration was not the product of undue influence * * *".
 The judgment below is affirmed. *Page 120